COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Lemons
Argued at Alexandria, Virginia


DEBORAH A. GROW

                                    MEMORANDUM OPINION* BY
v.    Record No. 2755-98-4         JUDGE ROSEMARIE ANNUNZIATA
                                         JANUARY 27, 2000
DAVID P. GROW


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                  M. Langhorne Keith, Judge

          Mary Elliott for appellant.

          Rebecca R. Masri (Law Offices of Earl E.
          Shaffer, on brief), for appellee.


     Deborah A. Grow ("wife") appeals from an order of the

Circuit Court of Fairfax County, decreeing that her Property

Settlement Agreement ("PSA") with her former husband, David P.

Grow ("husband") is legally valid and enforceable.  Wife asserts

that the PSA 1) is invalid because of fraudulent inducement by

husband; 2) is unconscionable; 3) is invalid because she

consented to it under duress; and 4) has been repudiated by

husband.  Wife also contends the trial court erred by refusing

to admit into evidence the de bene esse deposition of Sandra

Browning.  We find no error and affirm the decision of the trial

court.

     *Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## BACKGROUND

In accordance with well established principles, this Court views the facts in the light most favorable to the party prevailing below.  See Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999).  "'Where . . . the [trial] court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"  Hurt v. Hurt, 16 Va. App. 792, 798, 433 S.E.2d 493, 497 (1993) (quoting Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (citations omitted)).

The parties to this appeal were married on March 9, 1985, and during the course of their marriage gave birth to two daughters.  For all but the first three months of the twelve-year marriage, wife was a full-time homemaker.  By the spring of 1997, wife had become severely depressed, and she underwent treatment that included counseling and medication. She continued her treatment with anti-depressant drugs through the fall of 1997.  In August, 1997, husband claimed the parties' children told him that wife had become verbally and physically abusive toward them, and had on at least one occasion struck them with a wooden spoon.  By September, 1997, husband suspected wife was suffering from severe mental illness.  At that time, he

began to compile documentary evidence he believed would show that she was abusing the children.

At some time prior to September 25, husband hired an attorney to draft a separation agreement. Upon learning of husband's intention to remove her from the marital home and to seek a legal separation, wife hired an attorney and withdrew half the funds from the parties' joint checking account. That evening she confronted husband concerning his intentions, which he admitted. He also accused wife of abusing the parties' children. Husband then produced a draft property settlement agreement. Because wife was too emotionally distressed to read the document, husband read portions of it to her. No agreement was reached at that time, however.

I.

WIFE'S CLAIM OF FRAUDULENT INDUCEMENT

Wife contends that husband obtained her consent to the PSA by assuring her that, if she agreed to it, he would permit her continued visitation with the children. Wife argues that husband's representation constituted constructive fraud, because he subsequently petitioned the court to limit her visitation rights. We find wife's claim to be without merit.

"'"[T]he elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or

negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation."'" Prospect Development Co., Inc. v. Bershader, 258 Va. 75, 86, 515 S.E.2d 291, 297 (1999) (quoting Blair Constr., Inc. v. Weatherford, 253 Va. 343, 346-47, 485 S.E.2d 137, 138-39 (1997) (citations omitted)). See Webb v. Webb, 16 Va. App. 486, 491, 431 S.E.2d 55, 59 (1993).

Additionally, "[t]he duty by which conduct is measured to determine fraud is established by the relationship and circumstances which exist between parties." Webb, 16 Va. App. at 491, 431 S.E.2d at 59 (citing Drewry v. Drewry, 8 Va. App. 460, 469, 383 S.E.2d 12, 16 (1989)). "Marriage is a confidential relationship of trust imposing the highest fiduciary duty upon the spouses in their intermarital dealings." Derby v. Derby, 8 Va. App. 19, 27, 378 S.E.2d 74, 78 (1989). However, "[i]f a husband and wife separate and employ attorneys to negotiate an agreement in settlement of their property rights, they become adversaries and their former fiduciary or confidential relationship ends." Barnes v. Barnes, 231 Va. 39, 42, 340 S.E.2d 803, 804 (1986) (quoted in Derby, 8 Va. App. at 27, 378 S.E.2d at 78 (citations omitted)).

Wife presented in her testimony the only evidence in support for her claim that she was fraudulently induced by husband to enter the PSA. Wife testified that husband made

- 4 -

statements leading her to believe that if she would sign the PSA, she would be able to see her children, and that if she withheld her consent to the agreement her visitation with them would be curtailed.  In fact, the record fails to reflect that husband made any such representations.

Wife also contends that husband held out the hope of reconciliation, and on that ground she entered the PSA. However, under this Court's decision in Derby, evidence of harbored hopes of reconciliation is insufficient to establish fraud.  Furthermore, the record reflects that wife was well aware of her husband's intention to separate from her and that he was proceeding with the divorce action.  As such, husband's action lacked the "tendency to deceive [wife] or violate [her] confidence."  Derby, 8 Va. App. at 26, 378 S.E.2d at 78.

Finally, wife premises her claim of constructive fraud on husband's purported representation that he did not intend to seek child support from her, contending that his fraudulent intent was made evident when he ultimately petitioned the court for child support in his cross-bill of complaint.  However, the PSA expressly reserves husband's right to seek child support, knowledge with which wife is chargeable since the term was included in the PSA when she signed it.  She thus cannot claim to have been misled as to any material aspect of the agreement's provisions regarding child support, because no claim of fraud

lies when the party claiming fraud had knowledge of the true state of affairs. Compare Chesapeake & Ohio Ry. Co. v. Walker, et al., 100 Va. 69, 93, 40 S.E. 633, 641 (1902) (party alleging fraud must "be destitute of knowledge of the [true] state of facts" fraudulently misrepresented).

In sum, the evidence presented does not rise to the level of clear and convincing proof that husband misrepresented a material fact which induced wife to enter the PSA. Accordingly, we find no error in the trial court's findings on this issue.

II.

WIFE'S CLAIM THAT PSA IS UNCONSCIONABLE

Wife's claim that the PSA should be set aside on the ground of unconscionability is without merit. Under the terms of the PSA the parties agreed that funds in the amount of $3,000 that wife withdrew from the parties' joint bank account were to be considered a lump sum payment to her. Husband agreed to pay wife $300 per month in spousal support, subject to incremental reductions should her income increase above levels set forth in the agreement. Husband also agreed to maintain health insurance coverage of wife by his health insurance provider until the parties were divorced, and to pay one-half of the premiums on wife's life insurance policy benefiting the children. The parties agreed that their jointly owned house would become the sole property of the husband, who would assume all financial

- 6 -

obligations connected with it. They also divided their personal property, with wife being provided with household items having an agreed value of $14,495, in addition to one of the two family cars. Finally, the parties agreed to an equal division of husband's vested federal government retirement plan. Husband also agreed to assume as his sole obligation any of the parties' jointly assumed debts not otherwise provided for in the PSA.

The trial court found that, although the PSA may have favored husband and may have constituted "a bad bargain" for wife, it nevertheless was not "so inadequate" that "the necessary clear and convincing evidence to set aside [the] agreement is there." The evidence supports the trial court's decision on this issue.

The party challenging a property settlement agreement must prove unconscionability by clear and convincing evidence. See Derby, 8 Va. App. at 26, 378 S.E.2d at 77 (citing Winn v. Aleda Constr. Co., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984); Gill v. Gill, 219 Va. 1101, 1106, 254 S.E.2d 122, 125 (1979)). When asked to determine whether such a gross disparity in exchanged value exists to rescind a settlement agreement on grounds of unconscionability, a court should consider "'whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement unconscionable.'" Drewry, 8 Va. App. at 472-73, 383 S.E.2d at

18 (quoting Derby, 8 Va. App. at 28, 378 S.E.2d at 79).  In some instances, "'[a] party may be free of fraud but guilty of overreaching or oppressive conduct in securing the agreement which is so patently unfair that courts of equity may refuse to enforce it.'"  Id. at 472, 383 S.E.2d at 18 (quoting Derby, 8 Va. App. at 28, 378 S.E.2d at 78).  However, absent evidence of a gross disparity in the value exchanged, the court need not consider whether one of the parties was guilty of such overreaching conduct.  See id. at 473, 383 S.E.2d at 18.  As we have observed previously, "'"[c]ourts cannot relieve . . . the consequences of a contract merely because it was unwise" . . . [or] "rewrite a contract simply because the contract may appear to reach an unfair result."'"  Pelfrey v. Pelfrey, 25 Va. App. 239, 245, 487 S.E.2d 281, 284 (1997) (quoting Rogers v. Yourshaw, 18 Va. App. 816, 823, 448 S.E.2d 884, 888 (1994)).

Although the PSA arguably leaves husband in a better position than wife, it clearly evidences an exchange of value that is not grossly disparate:  Husband assumed responsibility for all indebtedness remaining on the home mortgage; he provided wife with health insurance coverage until the divorce; he provided wife with spousal support, however small a percentage of his gross income it may have been; wife took possession of personalty valued at over $14,000; and she was awarded at least a portion of the funds in the parties' joint bank account.  As

- 8 -

wife's proof falls well below the clear and convincing evidentiary burden which is required by law, her claim must fail.[1]

### III.

### WIFE'S CLAIM OF DURESS

Wife's claim she consented to the provisions of the PSA under duress is without merit. Wife focuses her argument upon the two weeks from September 26, 1997 to October 15, 1997, when she finally signed the PSA. She claims that during this period husband forced her, almost without surcease, to contemplate the terms of the agreement. She claims, inter alia, that husband stated that if she did not cooperate with him, the terms of separation would have to be settled in court, in which case his allegations of wife's child abuse would be aired, likely to her detriment. She claims husband told her that such allegations "would follow [her] for the rest of [her] life." In sum, wife argues that this approximately two-week period of "intense discussion" regarding the allegations of child abuse, her mental stability, and the possible results of settling the conditions of separation in court rather than by agreement, constituted a "long continued and deliberate course of mental intimidation,"

---

[1] Because we resolve the claim of unconscionability against wife, we need not reach her contention that she consented to the PSA as a result of undue influence exercised over her by husband. Compare Banner v. Rosser, 96 Va. 238, 246-48, 31 S.E. 67, 69-70 (1898).

"which resulted in the [PSA] being signed by [her] under duress."

Because "'[d]uress is not readily accepted as an excuse,' and must be proven by clear and convincing evidence," Pelfrey, 25 Va. App. at 246, 487 S.E.2d at 284, wife must meet a high evidentiary burden to prove her claim.  She has not met this burden.  The trial court concluded that wife had not been subject to any threats.  Determinations of credibility and weight of the evidence fall within the discretion of the trier of fact.  See Anderson v. Anderson, 29 Va. App. 673, 687, 514 S.E.2d 369, 376 (1999) ("the trier of fact determines the credibility and weight of the evidence"); Parish v. Spaulding, 26 Va. App. 566, 575, 496 S.E.2d 91, 95 (1998) ("it is well settled that issues of credibility and the weight of the evidence are within the unique province of the trier of fact"). "This Court will not substitute its judgment for the trial court's determination . . . ."  Parish, 26 Va. App. at 575, 496 S.E.2d at 95.  We therefore affirm its finding that wife did not enter the PSA as a result of duress.

IV.

REPUDIATION CLAIM

Wife further claims that because the PSA granted her regular, unsupervised visitation with her children, husband's subsequent petition in the Juvenile and Domestic Relations

- 10 -

District Court of Fairfax County seeking to restrict her access to them to supervised visitation only, filed within a month of executing the PSA, constitutes evidence of repudiation sufficient to prevent husband from enforcing the contract.

However, because wife's right of unsupervised visitation with the children was restored by consent decree entered June 15, 1998, we find her claim that husband repudiated the PSA to be without merit. See Hurt, 16 Va. App. at 798, 433 S.E.2d at 497 ("It is firmly established that for a repudiation of a contract to constitute a breach, the repudiation must be clear, absolute, unequivocal, and must cover the entire performance of the contract." (quoting Vahabzadeh v. Mooney, 241 Va. 47, 51, 399 S.E.2d 803, 805 (1991))); see also Allocca v. Allocca 23 Va. App. 571, 578-79, 478 S.E.2d 702, 705-06 (1996); Carter v. Carter, 18 Va. App. 787, 789, 447 S.E.2d 522, 523 (1994).

Wife's claim that husband repudiated the PSA by seeking child support is also without merit as it is belied by the PSA itself. The PSA states specifically that husband "reserve[d] the right to request child support in the future." husband did not repudiate the contract by exercising a right it expressly provided him. In short, the evidence fails to support wife's claim that husband repudiated the PSA.

## EXCLUSION OF DE BENE ESSE DEPOSITION OF SANDRA BROWNING

Wife claims the trial court erred by excluding the de bene esse deposition of Sandra Browning, a licensed social worker in the employ of Fairfax County Child Protective Services. Wife contends that Browning falls squarely within Rule 4:7(a)(4)(E)'s provisions allowing into evidence de bene esse depositions from "public officers" whose duties prevent them from appearing in court. Without deciding whether Browning falls within the ambit of Rule 4:7(a)(4)(E), we find no error in the exclusion of the deposition.

Browning is a Senior Social Worker with Fairfax County Child Protective Services. At the time of her deposition, she had been employed in child abuse investigation for sixteen years. She began her investigation of wife on November 19, 1997, pursuant to a report of suspected abuse made to social services by husband on November 7, 1997. In the course of her investigation, Browning concluded that the allegations of abuse were unfounded and that husband may have concocted them in an effort to alienate the children from wife.

Wife sought to have the deposition admitted to show that husband brought his allegations of child abuse against wife in bad faith, for the sole purpose of preventing her from having unsupervised visitation, and that husband repudiated the PSA and

misrepresented his intentions regarding visitation.  The court declined to admit the deposition on the ground that it was irrelevant to the issues under consideration.  "Absent an abuse of discretion, we will not reverse a trial court's decision in admitting or excluding evidence of prior occurrences."  A. H. v. Rockingham Pub. Co., Inc., 255 Va. 216, 224, 495 S.E.2d 482, 487 (1998) (citing Roll 'R' Way Rinks, Inc. v. Smith, 218 Va. 321, 327, 237 S.E.2d 157, 161 (1977)).  We find the court did not abuse its discretion in excluding the proffered evidence. Whether husband attempted to alienate the children from wife has no bearing upon whether her visitation with the children should have been suspended.  It further had no bearing on wife's claim that husband repudiated the agreement.  Finally, as we concluded supra, wife's allegation of fraud is without merit.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.